## Katie Kahne, William Atkins and Charles Atkins, Appellants, v. Warren W. Lowe, Administrator, Appellee.

1. EXECUTORS AND ADMINISTRATORS, § 526*—*when allowance of attorney's fees to executor proper.* An allowance to an executor of $70 attorney's fees in connection with a sale of realty of the estate *held* proper, although the sale was not consummated.

2. EXECUTORS AND ADMINISTRATORS, § 561*—*when allowance of extra compensation to executor improper.* An allowance of extra compensation to an executor who has been awarded 6 per cent on the personal estate and rents and 3 per cent on money borrowed on the realty, for services in settling a claim against the estate and in collecting rents, in connection with which matters no expenses were incurred by him, *held* improper.

3. EXECUTORS AND ADMINISTRATORS, § 520*—*when allowance to executor of amount paid for commission on loan on realty of estate is proper.* An allowance to an executor of an amount paid by him as commission to procure a loan effected by him on the realty of the estate to raise funds to meet the claims against the estate *held* proper, even though no order was entered authorizing the payment of the commission where such was, however, directed and approved by the judge of the Probate Court.

4. EXECUTORS AND ADMINISTRATORS, § 560*—*when executor not al-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*lowed commissions on amount bid on realty.* An executor will not be allowed commissions on the amount bid on the realty of the estate when offered for sale by him where the sale was never completed or approved and no money was received thereunder.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1918. Reversed and remanded with directions. Opinion filed November 1, 1918.

KEEFE, HADLEY & BAXTER, for appellants.

C. W. LEVERETT and SPRINGER & BUCKLEY, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

It appears from the record in this case that Michael A. Lowe departed this life on or about the 27th of April, 1910, leaving a last will and testament. The will, after providing for the payment of debts, funeral expenses and a few legacies, then directed that after the expiration of 6 years from his decease that his executor should sell all of his real estate and property at public or private sale, as should seem to him most advantageous, and, upon approval of such sale by the Probate Court of Madison county, that deeds of conveyance be made, and that after paying the expenses and costs of such sale, and legacies, he directed that the remainder of the proceeds be divided between his children Edward and James and Alice Tesson, giving to each of them a one-fourth part, and to his granddaughters Mamie and Katie, daughters of his deceased son, William Lowe, each a one-eighth part of the money. He further directed by his will that the executor named therein should manage and control the estate for and during the period of 6 years after his decease. He appointed Warren W. Lowe, the appellee, as executor and trustee and directed that he be allowed liberal compensation for his services as exec-

utor and trustee. Upon the decease of Michael A. Lowe the will was admitted to probate and the appellee qualified as such executor. Debts and demands were allowed against said estate to the amount of $9,932.65. The deceased left no personal property of any consequence and the executor was without means to pay the debts. It appears that at this time real estate of the character owned by the deceased was not of ready sale and would not, in the judgment of the executor and those interested, sell for its full value. The executor and the heirs presented a petition to the Probate Court asking that the appellee be allowed to borrow the sum of $10,000 for a period not to exceed 5 years, with interest not to exceed 6 per cent per annum, and to secure said amount by a mortgage on the real estate owned by the deceased. Upon a hearing the prayer of the petition was granted and the appellee authorized to borrow $10,000 for 5 years with interest at the rate of 6 per cent per annum, and to secure the same by mortgage upon the real estate. The appellee experienced some difficulty in securing a loan. He was assisted by the judge of the Probate Court, but they were unable to secure the loan without a commission, so upon the verbal direction of the judge of the Probate Court a loan was secured from the Alton Banking & Trust Company of Alton, Illinois, for 5 years with interest at the rate of 6 per cent per annum, and the appellee also agreed to pay a commission of $200 to secure this loan, which was paid under the direction and approval of the judge of the Probate Court, but no record was made of such approval. The money derived from this loan was used in paying the indebtedness of said estate, and the legacies provided for in the will. The principal part of the real estate was leased by appellee to James A. Lowe, one of the heirs and devisees under said will, for an annual rental of $650. The remainder of the estate was leased from time

to time by the appellee and he collected the rents thereon in small amounts. Upon the expiration of the 6 years from the date of the death of Michael A. Lowe, the executor advertised the real estate for sale at public vendue and proceeded to sell all of said real estate, which was bid in by the said heirs and devisees at $20,500. The executor reported this sale to the court but declined to approve it, and recommended that it be not approved by the court, as he said the property was of much greater value than the amount bid, and after the executor had recommended that the sale be not approved and during the time that the report of sale was pending before the Probate Court for its action, the devisees being of age elected to take and receive all of the real estate owned by the said Michael A. Lowe at the time of his death in lieu of the money that they or either of them might or would receive of the amounts to arise from a sale of said real estate by the executor of said last will and testament of the said Michael A. Lowe, deceased, and filed such declaration as required by law. The report of sale was not disposed of by the Probate Court. After the devisees had elected to receive the real estate in lieu of the legacies, the appellee, as executor, filed a report and the appellants filed objections to several items contained in this report. After a great number of continuances the objections were heard and the items passed upon by the Probate Court, from which order an appeal was taken to the Circuit Court, where a hearing was had upon the several objections, to which exceptions were taken and an appeal prosecuted to this court. Upon this appeal there are only four items to which objections were made that are in controversy or have been argued. The first objection urged is to the allowance by the lower court of attorney's fees to C. W. Leverett in the sum of $70. It appears from this record that C. W. Leverett was assisting appellee in the making of this sale and made

several trips to the county seat for the purpose of attending to the objections that were urged, and, as we read the record, also for the purpose of bringing to a hearing the approval of the sale of the real estate, and appellee says in his testimony that he was representing him in these matters as executor. While it is not very clear that all of these services were rendered strictly in the interest of the estate, yet a portion of them were, to say the least of it, and the judge of the Probate Court knew and understood the purpose of the visits of Leverett and the things that he did in and about taking care of the estate, and a portion of this was at least rendered in looking after the sale of the real estate that was attempted to be made, and the will authorized the payment of the expenses attending the sale, and, while it may be true the sale was not consummated, nevertheless the expenses had been incurred. This amount was allowed by the judge of the Probate Court, also by the Circuit Court, and we are not able to say that it was such error as to require a reversal on the account of this action of the court.

The next error complained of was a charge of $450 allowed to the executor as extra commissions for extra services rendered to said estate. It is said by the appellee that the basis of the allowance of this extra compensation was on account of the settlement of the claim with Mrs. Simmons by which $1,000 was saved to the estate, and also for extra compensation in renting four small tenement houses in which appellee experienced much difficulty in collecting the rents. It is true that a portion of the rents was very difficult to collect, according to the testimony of appellee, but a much larger portion of them was rented in a lump sum of $650 per year, and was in fact collected at the end of the tenancy in the sum of $2,669.75. We are unable to see upon what principle this amount of $450 compensation over and above the 6 per cent that

had been allowed to the executor could be awarded
to him in this report. The statute provides as fol-
lows: ''That executors and administrators shall be
allowed as compensation for their services a sum not
exceeding·six per centum on the amount of personal
estate, and not exceeding three per centum on the
money arising from the sale of real estate, with such
additional allowances for costs and charges in col-
lecting and defending the claims of the estate and
disposing of the same, as shall be reasonable.'' Chap-
ter 3, sec. 133, Rev. St. Ill. (J. & A. ¶ 182).

The executor had been awarded the full amount of
6 per cent upon all of the personal estate and rents
that had come into his hands, and had been awarded
3 per cent on the money borrowed upon the real estate,
and we are unable to see how he would be entitled to
any further compensation or expenses unless such ex-
pense was incurred ''for costs and charges in collect-
ing and defending the claims of the estate and dis-
posing of the same, as shall be reasonable.'' The
Supreme Court, after quoting the above statute, says:
''There is thus no warrant of law for allowing to ad-
ministrators, as compensation for their services, a
sum exceeding six per centum on the amount of the
personal estate.'' *Askew v. Hudgens,* 99 Ill. 468.
There is nothing in this record that we have been
able to find that would justify the court in awarding
this extra commission or compensation in view of the
statute above quoted. We are of the opinion that the
court should have sustained the objections to this
claim, and that it erred in not doing so.

It is next contended that the court erred in allow-
ing the executor credit for the $200 commission paid
to the Alton Banking & Trust Company as set forth
in the report. This $200 was paid at the time the ap-
pellee was endeavoring to secure a loan to pay the
indebtedness of the estate, and it seems to us that
it is a just claim, as it was expenses incurred in and

about taking care of the claims against the estate and the disposition of them, and it was in the discretion of the court to allow the same. It is said the order of the court only provides for the payment of 6 per cent interest. That is true, and that is all the interest they did pay, but in order to secure the fund he had to pay the commission of $200, and while no order of the court was made authorizing it, it appears that the probate judge did in fact direct and approve it, and the probate judge and the Circuit Court allowed this as a just claim against the estate, and we see no error in so doing. We think the court committed no error in overruling the objections to this item, and this item should have been allowed.

It is next insisted that the court erred in allowing a commission of 2½ per cent on the $20,500 bid made by the heirs of the deceased for the real estate offered for sale by the executor, which sale was never approved, and the executor in fact recommended that it be not approved. It is argued by counsel for appellee that he spent much time in the advertising of the said sale and incurred considerable expense therein, and made much effort to induce bidders to buy the lands, and in fact procured a large attendance at the sale by his efforts, and that the real estate was worth much in excess of the amount bid by the heirs but he refused to approve the sale, reported it to the court as required by the will and asked the court not to approve it for several reasons, among them, that it was not bid in for its real value. This sale never was approved and under the will could not be a completed sale until approved by the Probate Court. No money was ever received by the appellee upon this sale, and under the statute the appellee was only entitled to commissions of not exceeding 3 per cent "on the money arising from the sale of real estate." No money arose from this sale, and we do not see how under this statute and the constructions given to it

by the courts he would be entitled to commission until the sale had been completed and the money received by the executor. It is said that this is a great hardship and requires the services of the executor to be rendered without compensation. He had been compensated by receiving $300 upon the loan made and commissions upon the several amounts collected by him as rents, which amounted to several hundred dollars, and we are not able to say that he has been unjustly treated in this respect, but whatever the facts may be as to the services performed by him in this regard, he did not complete the sale and did not receive any money from the sale of the real estate, and under the statute he would not be entitled to the commissions claimed. We think the court erred in overruling the objections to this claim.

We are of the opinion that the claims for the $70 for attorney's fees and for $200 commissions paid to the Alton Banking & Trust Company should have been allowed, and that the claims of $450 for extra compensation and commissions and for $625 for commissions upon the sale of real estate attempted to be effected should not have been allowed.

The judgment of the Circuit Court is reversed with directions to allow to appellee the $70 and the $200, and to refuse the items of $450 and $625. As claims allowed by the Circuit Court were affirmed in part and reversed in part, it is ordered that each of the parties pay one-half of the costs in this court.

The judgment of the lower court is reversed and remanded with directions as above stated.

*Reversed and remanded with directions.*